UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

FIGG BRIDGE BUILDERS, LLC.

    Plaintiff,

vs.

CASE NO.:

LEXINGTON INSURANCE COMPANY

    Defendant.

_____/

## COMPLAINT

FIGG BRIDGE BUILDERS, LLC ("FIGG"), by and through its undersigned counsel, files suit against LEXINGTON INSURANCE COMPANY ("Lexington") and alleges:

## NATURE OF ACTION

1. This is an action for declaratory relief under 28 U.S.C. § 2201 to establish the rights and responsibilities of FIGG and Lexington under a Commercial General Liability Policy bearing policy number 023627244 for the policy period of July 10, 2017 through August 1, 2020 (the "CGL Policy" and a Professional Liability Policy bearing policy number 061853758 for the policy period of July 10, 2017 through May 31, 2020 (the "PL Policy") (the CGL Policy and PL Policy collectively referred to as the "Policies").

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. § 1332 because there is diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3. Venue is properly in this district since the Policies were issued and delivered to FIGG in this district.

## THE PARTIES

4. FIGG is a Florida limited liability corporation with its principal place of business in Florida.

5. Lexington is a Delaware corporation with its statutory home office in Wilmington, Delaware and its business address, mailing address and main administrative office in Boston, Massachusetts.

6. Lexington is authorized to and does business in Florida.

## BACKGROUND

7. FIGG is in the business of designing and constructing major concrete segmental bridge projects in the United States.

8. With respect to the circumstances that are the subject of this action, Cline Avenue Bridge, LLC ("CAB") contracted with FIGG to act as the engineering, procurement, and construction contractor for a new private toll bridge known as the Cline Avenue Bridge in East Chicago, Indiana (the "Project").

9. In preparation for and furtherance of its work, FIGG sought and was issued coverage under the Policies from Lexington.

10. A copy of the CGL Policy as originally issued is attached hereto as **Exhibit "1"**.

11. A copy of the PL Policy as originally issued is attached hereto as **Exhibit "2".**

12. On April 7, 2020, FIGG was wrongfully issued a Notice of Termination by CAB on the Project with only a few months before construction completion. The Notice of Termination was in direct contradiction to the terms of the Contract and amounted to a material breach of the Contract by CAB.

13. On July 28, 2020, CAB initiated arbitration proceedings against FIGG with the American Arbitration Association for breach of contract, among others and assigned AAA Case

No. 01-20-0010-8384, a copy of which is attached hereto **Exhibit "3"**[1]. CAB has also issued an expert report that contained allegations of defective work on the Project. A copy of the expert report is attached hereto as **Exhibit "4"**[2].

14. In response to the arbitration, FIGG responded accordingly and has raised claims against CAB for CAB's wrongful termination which constitutes a breach of contract and other claims against CAB in the Arbitration. A copy of FIGG's most recent response is attached hereto as **Exhibit "5"**[3]. The Arbitration is currently ongoing and proceeding in a timely manner.

15. The crux of the Arbitration is the propriety of CAB's termination of FIGG under the applicable contract. Accordingly, FIGG's defense to CAB's claims are inextricably tied to FIGG's prosecution of its wrongful termination claims.

16. This claim was timely reported to Lexington on April 20, 2020 under both the CGL Policy and the PL Policy, respectively. To date, Lexington under the Policies has agreed to provide FIGG a defense under the Policies and retained the firm of Norris Choplin Schroeder LLP to defend FIGG in the Arbitration.

17. On August 27, 2020, Lexington issued a Reservation of Rights ("ROR") letter to FIGG under the PL Policy. The ROR indicated Lexington's agreement to provide FIGG a defense in the Arbitration pursuant to a full reservation of rights, and unilaterally assigned defense counsel, which FIGG disputed was appropriate. A copy of that correspondence is attached as **Exhibit "6"**.

---

[1] FIGG has moved contemporaneously herewith that **Exhibit "3"** be filed under seal.

[2] FIGG has moved contemporaneously herewith that **Exhibit "4"** be filed under seal.

[3] FIGG has moved contemporaneously herewith that **Exhibit "5"** be filed under seal.

18. In the PL Policy ROR, Lexington attempted to parse its defense obligation and made efforts to disclaim any obligation to participate in the legal fees and expenses incurred for FIGG's counterclaims against CAB.

19. On December 18, 2020, FIGG responded to Lexington's PL ROR and challenged Lexington's position that it has no obligation to defend any counterclaims asserted by FIGG as well as its unilateral assignment of defense counsel. A copy of that correspondence is included herewith as **Exhibit "7"**.

20. Lexington reiterated its position via letter dated January 21, 2021 and attached as **Exhibit "8"**.

21. FIGG once more responded on January 29, 2021 and explained with the aid of relevant case law that FIGG's counterclaims "are not only necessary as compulsory counterclaims but will also operate to cut off or limit FIGG's liability – which directly benefits the defense of the claims against your Insured." FIGG further indicated that the counterclaims "are reasonable and necessary to the defense of FIGG and the funding of which falls squarely under Lexington's duty to defend. . . ." A copy of that correspondence it included herewith as **Exhibit "9"**.

22. FIGG again raised this issue to Lexington on March 29, 2021. See **Exhibit "10"**. Undeterred, Lexington continued to reiterate its position via a letter dated April 4, 2021 wherein Lexington argues the PL Policy "does not obligate Lexington to pay for [FIGG's] prosecution of its own affirmative claims against others." See **Exhibit "11"**.

23. FIGG continued to pursue the issue via correspondence dated May 25, 2021 in which it indicated that Lexington was taking an "extremely narrow version of what constitutes a defense" and in so doing, Lexington "is not keeping with applicable case law, the policy, or Lexington's duty of good faith to its insured." FIGG indicated Lexington's refusal to aid in the

prosecution of affirmative claims "is not unlike refusing to plead affirmative defenses."  See **Exhibit "12"**.

24.     On June 4, 2021, Lexington once more indicated via letter that it would not participate in FIGG's affirmative claims.  See **Exhibit "13"**.

25.     As the result of Lexington's refusal to participate in FIGG's counterclaims against CAB, FIGG has incurred significant fees and costs in pursuing its compulsory counterclaims.  Such counterclaims being necessary to defeat CAB's claims of liability.

26.     Further, FIGG has requested on numerous occasions that a single testifying expert be used to both defend the claims in the Arbitration and to prosecute FIGG's affirmative claims.

27.     However, Lexington has rejected FIGG's requests and has actively worked to block FIGG from utilizing the same expert for the defense of the case and the counterclaims.

28.     By correspondence dated August 30, 2021, FIGG raised this issue to Lexington and set forth how Lexington's position is detrimental to FIGG's defense.  Due to time constraints, FIGG requested a phone call to discuss a path forward.  A copy of this correspondence is attached as **Exhibit "14"**.

29.     On August 31, 2021, Lexington once more refused to budge from its position and rebuffed FIGG's request for a call.  See **Exhibit "15"**.

30.     It has become apparent to FIGG through correspondence and communications with Lexington and their appointed defense counsel that Lexington's actions reflected herein are merely an attempt to limit the financial impact of FIGG's defense to Lexington and not being made in the best interest of FIGG or its defense to the multi-million dollar claims asserted by CAB.  Such is counter to Lexington's duty to defend FIGG as its named insured.

31. On September 1, 2020, Lexington issued a ROR to FIGG under the CGL Policy. See **Exhibit "16"**. While the ROR did not make mention of affirmative claims, Lexington has apparently taken the position that it is not participating in affirmative claims under the CGL Policy as well. In fact, Lexington on behalf of the CGL Policy did not so much as respond to FIGG's August 30, 2021 correspondence concerning the expert issue, attached as **Exhibit "14"**.

32. FIGG respectfully submits that there is an apparent dispute regarding the obligation of Lexington to participate in FIGG's prosecution of affirmative claims under its defense obligation under both the Policies.

33. FIGG has retained the law firm of Boyle, Leonard & Anderson, P.A. to represent it in this cause of action and is obligated to pay it reasonable attorneys' fees. FIGG claims its attorney fees, legal assistant fees, and costs pursuant to Fla. Stat. §627.428, §57.104, §57.041, and/or §626.9373, which are applicable to this litigation.

<b><u>COUNT 1 - ACTION FOR DECLARATORY RELIEF<br>AGAINST LEXINGTON & DEMAND FOR JURY TRIAL</u></b>

34. FIGG re-alleges all common allegations in Paragraphs 1 through 33 above as if fully set forth herein.

35. This Court has jurisdiction over this action for declaratory relief pursuant to 28 U.S.C. § 2201.

36. FIGG demands a jury trial specifically as to this Count.

37. Lexington issued the CGL Policy to FIGG. A copy of the Policy is attached as **Exhibit "1"**.

38. Lexington also issued the PL Policy to FIGG. A copy of the Policy is attached as **Exhibit "2"**.

39. Lexington has refused under the Policies to participate in FIGG's counterclaims against CAB despite the fact such claims fall under FIGG's defense per Florida law, which governs this dispute. Moreover, such counterclaims are necessary to the defense of the matter in that success in prosecuting the same will defeat CAB's claims.

40. Lexington's handling of the defense of this action and erroneous position on the scope of its obligations has handicapped FIGG's defense and resulted in out of pocket fees and expenses that should be covered under Lexington's defense obligation.

41. Accordingly, the defense provided by Lexington has been inadequate to date.

42. On multiple occasions, Lexington acknowledged FIGG's dispute with respect to the ROR and the refusal to participate in FIGG's counterclaims.

43. However, Lexington refused to amend its ROR, participate in the counterclaims, or share in a testifying expert.

44. FIGG believes Lexington is required under its defense obligation to participate in FIGG's affirmative claims which are reasonable and necessary to limit or defeat liability under the Policies and seeks a declaration with respect to the same.

45. FIGG further seeks a declaration that Lexington should reimburse FIGG for any fees and costs incurred with respect to the affirmative claims against CAB in the Arbitration.

46. In addition, under the Policies Lexington owes a duty of good faith and fair dealing and should work with FIGG to accomplish its goals in the Arbitration rather than blocking the use of FIGG's chosen expert, and FIGG seeks a declaration with respect to the same.

47. The CGL Policy contains language that designates it as the primary policy of insurance for FIGG over the PL Policy. FIGG seeks a declaration that the CGL Policy is primary over the PL Policy with respect to the Arbitration and has an obligation to pay 100% of the defense

fees and costs associated with the Arbitration and should reimburse the PL Policy for the amount of defense fees and costs it has paid to date.

48. FIGG further contends that it has complied with the terms of the Policies and seeks a declaration with respect to the same.

49. FIGG has complied with all conditions precedent to the filing of this lawsuit and, notwithstanding the same, Lexington has failed to comply with the terms of the Policies, including its defense obligation. Alternatively, to the extent that FIGG has failed to comply with any conditions precedent, the failure to comply with the same did not prejudice and/or is immaterial as an immaterial breach of the Policies. Alternatively, Lexington waived any such conditions and/or is estopped from asserting any defenses related to conditions precedent. More specifically, FIGG has plainly and repeatedly given notice of its claims and/or positions which are the subject of this lawsuit to Lexington and/or its designated agents.

**WHEREFORE**, FIGG respectfully requests that this Honorable Court declare the rights of the parties as follows:

a) That this Court has jurisdiction over the subject matter;

b) That this Court has jurisdiction over the parties in this matter;

c) That the Policies were in full force and effect at all times relevant hereto;

d) That FIGG's counterclaims against CAB fall within Lexington's defense obligation under the Policies;

e) That Lexington should allow the use of FIGG's chosen testifying expert;

f) That FIGG is entitled to reimbursement from Lexington for all fees and costs incurred with respect to FIGG's counterclaims;

g) That the Lexington CGL Policy is primary to the Lexington PL Policy and is responsible for 100% of the defense fees and costs and should reimburse the PL Policy for any defense expenses incurred in the Arbitration.

h) That FIGG be awarded prejudgment interest, post judgment interest, taxable costs, attorneys' fees pursuant to Fla. Stat. §627.428, §57.104, §57.041, and/or §626.9373 as a result of prosecuting this action;

i) And grant all other relief as is just and proper.

Respectfully submitted,

September 16, 2021

> By: */s/ Amanda K. Anderson*
> BOYLE, LEONARD & ANDERSON, P.A.
> Amanda K. Anderson (FBN: 0091297)
> 9111 W. College Pointe Drive
> Fort Myers, FL 33919
> TEL: (239) 337-1303
> FAX: (239) 337-7674
> Primary: Eservice@Insurance-Counsel.com
> Secondary #1: AAnderson@Insurance-Counsel.com
> *ATTORNEY FOR FIGG BRIDGE BUILDERS, LLC.*